UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---------------------------------------------------------

SHIVA STEIN, :
:
    Plaintiff, : Civil Action No. _____
:
v. : **COMPLAINT FOR VIOLATIONS OF**
: **SECTIONS 14(a) AND 20(a) OF THE**
POPE RESOURCES, A DELAWARE : **SECURITIES EXCHANGE ACT OF**
LIMITED PARTNERSHIP, WILLIAM R. : **1934**
BROWN, JOHN E. CONLIN, SANDY D. :
MCDADE, MARIA M. POPE, and THOMAS : **JURY TRIAL DEMANDED**
M. RINGO, :
:
    Defendants. :

---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Pope Resources, a Delaware Limited Partnership ("Pope Resources or the "Company") and the members Pope Resources' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Pope Resources and Rayonier Inc. and its affiliates ("Rayonier").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on March 17, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company unitholders. The Registration Statement recommends that Company unitholders vote in favor of a proposed transaction whereby Rayonier Operating Partnership LP ("Opco"), an affiliate of Rayonier, will own all of the assets of Rayonier and Pope Resources and be the operating partnership of Rayonier's umbrella partnership real estate investment trust (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Pope unitholder (other than Rayonier, Opco or certain of their controlled affiliates) may elect to receive, for each Pope unit that they hold, either: (i) $125.00 in cash; (ii) 3.929 Rayonier shares; or (iii) 3.929 Opco units (the "Merger Consideration").

3. As discussed below, Defendants have asked Pope Resources' unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the Company's financial projections and the analyses performed by the Company's Special Committee's financial advisor, Centerview Partners LLC ("Centerview"), in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's unitholders prior to the forthcoming unitholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Pope Resources' unitholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1390, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. at 1316.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Pope Resources is a Delaware limited partnership and therefore formed in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Pope Resources' units and has held such units since prior to the wrongs complained of herein.

10. Individual Defendant William R. Brown has served as a member of the Board since 2015.

11. Individual Defendant John E. Conlin has served as a member of the Board since 2005.

12. Individual Defendant Sandy D. McDade has served as a member of the Board since 2016.

13. Individual Defendant Maria M. Pope has served as a member of the Board since 2012.

14. Individual Defendant Thomas M. Ringo has served as a member of the Board since 2014 and is the Company's President and Chief Executive Officer.

15. Defendant Pope Resources is a Delaware limited partnership and maintains its principal offices at 19950 Seventh Avenue NE, Suite 200, Poulsbo, Washington 98370. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "POPE."

16. The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. Pope Resources is engaged primarily in managing timber resources on its own properties, as well as those owned by others. The Company operates through three business segments: Fee Timber, Timberland Management and Real Estate. The Fee Timber operations consisted of growing and harvesting timber from approximately 212,000 acres that the Company owned or co-owned with its timber fund investors as tree farms, as of December 31, 2016. The Timberland Management segment is engaged in organizing and managing private equity timber funds using capital invested by third parties and the Company. The Real Estate segment's

operations were focused on a portfolio of approximately 2,200 acres in the west Puget Sound region of Washington. Its subsidiaries, ORM, Inc. and Olympic Resource Management LLC, facilitate the Timberland Management activities. Its Real Estate holdings are located in the Washington counties of Pierce, Kitsap and Jefferson with sales of land.

19. On January 15, 2020, the Company and Rayonier jointly announced the Proposed Transaction:

> WILDLIGHT, Fla. & POULSBO, Wash.--(BUSINESS WIRE)--Rayonier Inc. ("Rayonier") (NYSE:RYN) and Pope Resources, A Delaware Limited Partnership ("Pope Resources") (NASDAQ:POPE) announced today that they have entered into a definitive merger agreement under which Rayonier will acquire all of the outstanding limited partnership units of Pope Resources for consideration consisting of equity and cash. Under the terms of the agreement, which has been unanimously approved by the boards of directors of both companies as well as the special committee of Pope Resources' board composed solely of independent directors, Pope Resources unitholders will have the right to elect to receive (i) 3.929 common shares of Rayonier, (ii) 3.929 units of Rayonier Operating Partnership LP, or (iii) $125 in cash in exchange for each unit of Pope Resources, subject to a proration mechanism as described below. Based on Rayonier's 10-day volume-weighted average price, the transaction values Pope Resources' limited partnership equity at $554 million, or $126.91 per unit (assuming 70% of the Pope Resources units are exchanged for equity consideration and 30% are exchanged for cash consideration).
>
> Following the closing of the transaction, Rayonier Operating Partnership LP (n/k/a Rayonier Operating Company LLC) will own all of the assets of Rayonier and Pope Resources and will be the operating partnership of Rayonier's umbrella partnership real estate investment trust ("UPREIT"). The units of Rayonier Operating Partnership LP can be converted into cash based on the market price of Rayonier common shares or, at Rayonier's option, exchanged for Rayonier common shares on a 1:1 basis, following a 60-day notice period. Pope Resources unitholders that elect to receive Rayonier Operating Partnership LP units will generally defer any capital gain recognition on their Pope Resources units until they exchange those units for cash or Rayonier common shares.

"We are delighted to be combining two premier pure-play timber organizations using an innovative tax-deferred UPREIT structure," said David Nunes, President and CEO of Rayonier. "Pope Resources has a strong track record as a best-in-class Pacific Northwest timberland operator and possesses an excellent set of assets in high-quality markets. Our two organizations have very compatible cultures, a complementary set of assets and a shared dedication to value maximization through intensive silvicultural practices and higher-and-better-use real estate operations. The addition of these high-quality Pacific Northwest timberlands increases Rayonier's ownership in the region to 504,000 acres, adds 57 MMBF to our sustainable yield, increases our proportion of Douglas-fir inventory and offers a complementary age-class fit. We look forward to completing this transaction by mid-year, which continues our strategy of adding high-quality timberlands in strong log markets and building long-term value for our shareholders through prudent capital allocation."

"This transaction is the culmination of a thorough process undertaken by Pope Resources' board to maximize value for our unitholders," said Tom Ringo, President and CEO of Pope Resources. "Rayonier is the leading pure-play timberland REIT, with a well-diversified portfolio of timberlands and an established track record of creating long-term value from its assets. This transaction will provide our unitholders with the opportunity to defer capital gain recognition and participate in Rayonier's long-term upside potential, benefitting from a well-managed and diversified timberland portfolio while still enjoying a strong dividend yield. Like Pope Resources, Rayonier has a rich heritage of sustainably managing timberlands, and we look forward to working closely with them to realize the benefits of this combination on behalf of our unitholders."

* * *

**Transaction Details**

**Proration Mechanism**: Pursuant to the terms of the agreement, elections will be subject to proration to ensure that the aggregate amount of cash, on the one hand, and Rayonier common stock and Rayonier operating partnership units, on the other hand, that are issued in the merger would be equal to the amounts issued as if every Pope Resources unit received 2.751 Rayonier common shares or Rayonier operating partnership units and $37.50 in cash. If elections for the Rayonier common shares and Rayonier operating partnership units are oversubscribed, then to reduce the

effect of such proration Rayonier may, in its discretion, add additional equity (and decrease the amount of cash) payable to the Pope Resources unitholders making such elections.

**GP Consideration**: The merger agreement also provides for Rayonier to acquire the general partner entities of Pope Resources, Pope MGP, Inc. and Pope EGP, Inc., for consideration consisting of $10 million of cash (exclusive of the Pope Resources units owned by these entities).

**Valuation**: Inclusive of the general partner consideration described above, the transaction values Pope Resources' total equity at $564 million and its enterprise value at $656 million (excluding fund net debt).

**Transaction Support**: The general partners of Pope Resources have approved the transaction, and certain affiliated unitholders holding approximately 16% of the outstanding limited partnership units have entered into voting agreements to vote in favor of the merger.

\* \* \*

**Timing and Approvals**

The transaction is expected to close in mid-2020. The transaction requires approval of a majority of the Pope Resources unitholders and is subject to customary closing conditions and regulatory approvals.

**Advisors**

Credit Suisse is serving as financial advisor and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Rayonier. Centerview Partners is serving as financial advisor and Munger, Tolles & Olson LLP is serving as legal advisor to the special committee of Pope Resources' board. Davis Wright Tremaine LLP is serving as legal counsel to Pope Resources.

\* \* \*

20. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Pope Resources' unitholders are provided with the material information that has

7

been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming unitholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

21.     On March 17, 2020, Pope Resources and Rayonier jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

22.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Centerview in its analysis. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and its financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and its financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.

8

Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

23. For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2019 through 2025: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

24. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

25. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

26. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

27. With respect to Centerview's *Public Company Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected comparable companies observed by Centerview in the analysis; and (ii) any benchmarking analyses for Pope Resources in relation to the selected companies analyzed by Centerview.

28. With respect to Centerview's *Precedent Transaction Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Centerview in the analysis.

29. With respect to Centerview's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the ranges of illustrative terminal values of Pope for the period from October 1, 2019 through December 31, 2037; (ii) the inputs and assumptions underlying the use of the perpetuity growth rates ranging from 2.1% to 2.5% to Pope Resources' after-tax unlevered free cash flows for the terminal year; (iii) the inputs and assumptions underlying the discount rates ranging from 6.7% to 8.8%; (iv) the net debt as of September 30, 2019; and (v) the number of fully-diluted outstanding Pope units.

30. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the

Exchange Act. Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

31. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

33. Defendants have issued the Registration Statement with the intention of soliciting unitholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's unitholders vote in favor of the Proposed Transaction.

34. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but

11

failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

35. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

36. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. The Individual Defendants acted as controlling persons of Pope Resources within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Pope Resources, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Pope Resources, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

39. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Pope Resources, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

41. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and

information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

42. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

44. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 18, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

**OF COUNSEL:**

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*